■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANCIS J. MANN, Appellant. [629 NYS2d 290] —Spain, J. Appeal from a judgment of the County Court of Rensselaer County (Harvey, J.), rendered October 21, 1993, upon a verdict convict-

ing defendant of the crimes of attempted burglary in the second degree (three counts) and resisting arrest.

Defendant was indicted by a Grand Jury for several offenses arising out of incidents which occurred during the early morning hours of September 18, 1992 in the City of Troy, Rensselaer County.[1] Following a jury trial defendant was convicted of, *inter alia*, attempting to unlawfully enter three separate dwellings (353 Third Street [count one], 87 Ida Street [count two] and 91 Ida Street [count three]) between 3:00 A.M. and 3:30 A.M. with intent to commit a crime therein. County Court held a *Sandoval* hearing prior to trial and limited the extent of questioning defendant on some of his prior convictions; defendant elected not to testify at trial. The jury convicted defendant on all charges;[2] he was sentenced as a second felony offender to consecutive prison terms of $3^1/_2$ to 7 years on two of the attempted burglary convictions (counts one and two), a concurrent term of $3^1/_2$ to 7 years on the third attempted burglary conviction (count three) and a concurrent term of one year on the remaining charge. Defendant appeals.

Defendant's contention that he was effectively precluded from testifying on his own behalf by County Court's *Sandoval* rulings is without merit. County Court properly exercised its discretion (*see, People v Walker*, 83 NY2d 455, 459; *People v Lynch*, 209 AD2d 827, *lv denied* 84 NY2d 1034) by invoking an appropriate *Sandoval* compromise (*see, People v Mahan*, 195 AD2d 881, 883).

Defendant further contends that reversal is warranted on each of the three attempted burglary convictions because the People failed to prove each element of each offense beyond a reasonable doubt. In effect, defendant argues that the verdict as to the attempted burglary counts was not supported by sufficient evidence or, in the alternative, was against the weight of the evidence (*see, People v Bleakley*, 69 NY2d 490, 495; *People v Duffy*, 185 AD2d 528, 528-529, *lv denied* 80 NY2d 903; *People v Wagner*, 178 AD2d 679; *see also*, CPL 70.10 [2]; 70.20). "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00; *see, People v Warren*, 66 NY2d 831, 832-833). "A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when: * * * 2. The building is a dwelling." (Penal Law § 140.25.)

---

1. The indictment charged both defendant and codefendant George Mann.

2. Defendant's indictment also included a resisting arrest charge which has not been addressed in defendant's brief.

With respect to the attempted burglary at 353 Third Street (count one), the People presented the testimony of Loretta Tario, Frank Campbell and Pauline Lundstrom. Tario, a resident in the dwelling, testified that on the night in question at approximately 3:15 A.M., she observed four individuals talking outside her home. Shortly thereafter she saw a hand come through her front window where a window screen had been cut open. She then yelled, "get away from there" and the four ran away. She was unable to provide a clear description of the perpetrators but stated that one individual was short and appeared to be a boy and that another individual wore a cap or a bandanna. Consistent with Tario's testimony, Campbell testified that while he and his girlfriend, Lundstrom, were walking along Third Street at approximately 3:30 A.M., he observed defendant "taking a knife or something to a lady's screen" and that an older lady said, "Get the blank out of here." Campbell, however, claimed that only two men, defendant and codefendant George Mann, were in front of Tario's house. Campbell surprisingly testified on cross-examination that the reason why he could see the knife so clearly was that the sun was out. On redirect and on recross, he again stated that he observed the actions on Third Street during the daylight. Lundstrom testified that she observed defendant and Mann lifting the screen at a lady's house on Third Street and that she heard someone say, "Get away from the window." Lundstrom, however, also testified that defendant and Mann were the only people in front of Tario's house and that their heads were actually in the window.

Defendant's contention that Campbell's and Lundstrom's testimony with regard to 353 Third Street are simply not credible is without merit. "Testimony will be rejected as being incredible as a matter of law when it is 'incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience, or self-contradictory' " (*People v Shedrick*, 104 AD2d 263, 274, *affd* 66 NY2d 1015, quoting *People v Stroman*, 83 AD2d 370, 373; *see, People v Wrigglesworth*, 204 AD2d 758, 760). Credibility is generally an issue for the trier of fact "whose province it is to believe all or part of a witness's testimony, even though it is at times confusing and inconsistent" (*People v Bey*, 179 AD2d 905, 907, *lvs denied* 79 NY2d 918, 1046). While Campbell's testimony tests the limits of acceptable inconsistency and confusion, a careful review of the record reveals that such testimony was not incredible as a matter of law. While Campbell's testimony that the sun was up may have been inconsistent with the testimony that the incident occurred at about

3:00 A.M., the testimony was otherwise generally consistent with both Lundstrom's and Tario's testimony. In any event, even if Campbell's testimony should be disregarded, Lundstrom's testimony would place defendant at the 353 Third Street at approximately 3:30 A.M. Since there is legally sufficient evidence to show that defendant had the intent to commit the crime and engaged in conduct coming very near to the accomplishment of the intended crime (*see, People v Warren*, 66 NY2d 831, *supra*), and it does not appear that the jury "failed to give the evidence the weight it should be accorded" (*People v Wagner*, 178 AD2d 679, *supra*), we conclude that the jury properly convicted defendant of attempted burglary in the second degree at 353 Third Street.

As for the attempted burglary at 87 Ida Street (count two), the People elicited testimony from Daniel Frament,[3] Police Officer Christopher McDonald, Campbell and Lundstrom. McDonald, who lived next door at 91 Ida Street, awoke to a noise which sounded like someone trying to open his front door. After proceeding downstairs to investigate, McDonald looked out his front door; he did not see anyone on his front stoop but heard voices from the west at his neighbor's residence. McDonald then observed defendant and another individual at his neighbor's front door. Defendant and the other individual then walked to the easternmost first floor front window where they stopped. Though McDonald did not observe the window move in any way, he heard a noise which "sounded like the screen came off the window frame, like it was pushed in, off the frame". McDonald identified himself as a police officer and told them to remain where they were, but both defendant and the other individual ran away. McDonald chased them on foot and eventually in his truck and discovered defendant and the other individual one block north of his residence on Jefferson Street with Campbell and Lundstrom; when he identified himself as a police officer, defendant and the other individual once again ran away. Campbell testified that he observed defendant trying to open a first floor corner window on a white house on Ida Street—being the one next to the house owned by a police officer. He also testified that he saw defendant and the other individual run from the house. Lundstrom also testified that she saw defendant and another individual break into a white house around the corner from Jefferson Street; however, she did not believe that it was on Ida Street.

---

3. Frament, the resident of 87 Ida Street, was not home on the night in question and only testified to the fact that defendant was not given permission to enter his home.

Defendant's argument that the People did not prove defendant's intent to commit burglary at 87 Ida Street is without merit. While defendant asserts that there is no proof that he purposely pushed the screen in an attempt to enter the dwelling, the jury could infer defendant's intent from the evidence that defendant fled the scene when McDonald identified himself as a police officer. McDonald's testimony alone was legally sufficient to support defendant's conviction for attempted burglary in the second degree. We conclude that the jury properly weighed the evidence; thus, the verdict with respect to 87 Ida Street is not against the weight of the evidence.

With respect to the attempted burglary at 91 Ida Street (count three), the People only elicited testimony from McDonald and Lundstrom. As noted previously, McDonald, who lived at 91 Ida Street, heard noises which sounded like someone trying to open his front door. Though McDonald further testified that defendant did not have permission to be on his premises, he never actually saw defendant on his premises and only observed defendant on the front steps of 87 Ida Street. Lundstrom, however, testified that she told an undercover officer that she saw two guys going into that officer's window.

After careful consideration of the record, we conclude that defendant's argument that the People failed to establish that defendant entered or attempted to enter 91 Ida Street has merit. The only evidence placing defendant at 91 Ida Street was Lundstrom's testimony that: "the undercover officer came out of no where and said, 'I saw those two going in my window,' and he asked us, 'Did you guys see it?' I said, 'Yes, we did.' " Viewing the evidence in the light most favorable to the prosecution, the People correctly argue that the jury was entitled to infer that the undercover officer was McDonald and the house was 91 Ida Street; thus, if believed, such testimony may have been legally sufficient to show that defendant engaged in conduct which tends to effect the commission of a burglary at 91 Ida Street.

However, a closer examination of Lundstrom's testimony, when examined in conjunction with Campbell's and McDonald's testimony, suggests that Lundstrom was actually referring to 87 Ida Street rather than 91 Ida Street, and that the jury improperly weighed the evidence with regard to this count. McDonald testified that he did not see anyone on his premises and only saw defendant at 87 Ida Street. Thus, if the undercover officer in Lundstrom's testimony was McDonald, he would have likely only asked about the two entering the window at 87 Ida Street. Also, Lundstrom might have thought

87 Ida Street was the officer's home since she did not previously know the officer. Further, both Lundstrom and Campbell only testified with any detail about two attempted break-ins with the first one occurring on Third Street. Though Lundstrom suggested that defendant and Mann attempted to break into other homes along Jefferson Street, her testimony about the second break-in (e.g., through a window of a white house) was consistent with Campbell's testimony made specifically with respect to 87 Ida Street. Moreover, Lundstrom's testimony to the undercover officer specifically claims that both she and Campbell saw the break-in. For the foregoing reasons, we conclude that the jury improperly weighed the evidence and could not have found beyond a reasonable doubt that defendant attempted to enter 91 Ida Street. Accordingly, defendant's conviction as to 91 Ida Street must be reversed as against the weight of the evidence.

Finally, defendant's assertion that he was denied a fair trial because of the People's delayed production of *Rosario* material is unavailing (*see, People v Banch*, 80 NY2d 610, 615; *see also,* CPL 240.45). While the complete failure to disclose *Rosario* material results in an automatic right to a new trial, a mere delay in disclosure only requires reversal and a new trial if the delay substantially prejudices the defendant (*see, People v Banch, supra; People v Martinez,* 71 NY2d 937, 939; *People v Clark,* 194 AD2d 868, *lv denied* 82 NY2d 752). Here, the People did not provide prior statements of Campbell and Lundstrom until just prior to Campbell taking the witness stand. After an objection by defendant, County Court offered defendant a continuance prior to cross-examination. However, defendant did not make any further objections and never requested a continuance. While defendant argues that County Court's offer of a continuance was inadequate to remedy the People's *Rosario* violation, defendant has failed to show that he was prejudiced in any way. In fact, the record clearly shows that defendant was able to vigorously cross-examine both Campbell and Lundstrom. Reversal is therefore not warranted on this ground.

Cardona, P. J., Mercure, White and Peters, JJ., concur. Ordered that the judgment is modified, on the facts, by reversing so much thereof as convicted defendant of the crime of attempted burglary in the second degree with respect to the premises at 91 Ida Street; count three of the indictment is dismissed; and, as so modified, affirmed.