THIRD DEPARTMENT, AUGUST, 1998

(August 13, 1998)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOUIS S. CHANEY, Appellant. [686 NYS2d 871] —Cardona, P. J. Ap-

peal from a judgment of the County Court of Albany County (Rosen, J.), rendered December 14, 1995, upon a verdict convicting defendant of the crime of criminal sale of controlled substance in the third degree.

Defendant was apprehended in a police-initiated buy and bust operation conducted by the Special Investigations Unit (hereinafter SIU) of the Colonie Police Department at a shopping mall located in the Town of Colonie, Albany County, on July 28, 1994. He was indicted for criminal sale of a controlled substance in the third degree and subsequently moved to suppress evidence seized from his person at the time of the arrest. At the suppression hearing, the People produced Police Investigator Stephen Tanski, the arresting officer, as their sole witness.

Tanski testified that on the day in question he was assigned to assist the SIU as part of the "take down" team. On that occasion, the SIU utilized the services of a confidential informant to make the drug purchase. Tanski's specific assignment was to keep the target vehicle, a blue Cadillac, under surveillance and apprehend its occupants upon receipt of a signal over the radio that the buy had taken place. At approximately 3:30 P.M., Tanski and his partner observed the target vehicle pull into the parking lot near the east side of the mall complex and park near a stairwell leading to an upper parking level. Four occupants emerged from the vehicle. Two remained with the car and the other two went up the stairwell. Subsequently, upon receipt of a prearranged "go" signal from the team monitoring the transaction, Tanski and his partner intercepted the vehicle and apprehended the occupants, including defendant. Tanski searched defendant's person at the police station and recovered four $50 bills, part of the $250 used for buy money during the operation.

Defendant testified that he had agreed to drive an acquaintance of one of the occupants of the car to Colonie from Albany for an undisclosed fee. They stopped in the mall parking lot so the acquaintance could go to the bank. Upon his return, he handed defendant some folded money and vanished. Defendant placed the money into his shoe. As he attempted to move the vehicle, the police blocked it and arrested defendant.

County Court denied defendant's suppression motion and the matter proceeded to trial. Defendant was convicted as charged and sentenced as a second felony offender to a prison term of 9 to 18 years. Defendant appeals, contending that the evidence seized from his person should have been suppressed because the police lacked probable cause to arrest him.

It is settled law that "[a] police officer may arrest for an offense without a warrant if [that officer] has reasonable cause to believe that a person has committed that offense in his [or her] presence" (*People v Maldonado*, 86 NY2d 631, 635; *see*, CPL 140.10 [1] [b]). "Reasonable cause means probable cause * * * [and] exists when an officer has knowledge of facts and circumstances 'sufficient to support a reasonable belief that an offense has been or is being committed'" (*People v Maldonado, supra,* at 635, quoting *People v Bigelow*, 66 NY2d 417, 423 [citation omitted]; *see*, CPL 140.10 [1] [b]).

When the validity of a warrantless arrest is challenged, the presumption of probable cause disappears and the People bear the burden of coming forward with evidence showing that it was supported by probable cause (*see, People v Mims*, 88 NY2d 99, 113-114; *People v Parris*, 83 NY2d 342, 346; *People v Petralia*, 62 NY2d 47, *cert denied* 469 US 852). Moreover, when the fellow officer's rule is invoked, as in any other situation where "[p]robable cause [is] supplied, in whole or part, through hearsay information" (*People v Bigelow, supra,* at 423), the court's inquiry must focus upon the nature and reliability of the information possessed by the person transmitting it (*see, People v Rosario*, 78 NY2d 583, 588-589, *cert denied* 502 US 1109). "Unless that officer or agency is shown to have possessed probable cause, the warrantless arrest based upon that transmission may not stand" (*id.,* at 589).

The People may choose, as they did here, to satisfy their burden at the suppression hearing without producing the sending officer or the confidential informant or undercover officer "whose information to the police provided probable cause for the arrest, so long as the requirements of the *Aguilar-Spinelli* test [*see, Spinelli v United States*, 393 US 410; *Aguilar v Texas*, 378 US 108] are met" (*People v Parris, supra,* at 346; *see, People v Washington*, 87 NY2d 945, 946; *People v Petralia, supra,* at 52). Were this not so, "'an otherwise illegal arrest [might] be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest'" (*People v Petralia, supra,* at 51, quoting *Whiteley v Warden*, 401 US 560, 568). Thus, in *People v Petralia (supra),* the Court of Appeals held that the radio communication from the undercover (sending) officer that he had just purchased heroin from a specifically described suspect, who drove off in a specifically described vehicle, demonstrated both a basis of knowledge (undercover officer's personal participation in the drug purchase) and the informant's reliability (informant was the undercover police officer) was sufficient to satisfy both prongs

of the *Aguilar-Spinelli* test and establish probable cause for the defendant's arrest (*see, People v Parris*, 83 NY2d 342, 347, *supra*).

In *People v Washington* (*supra*, at 946), the Court of Appeals held that the arresting officer, who testified at the suppression hearing, was justified in relying upon her fellow officer's personal observation in arresting the defendant. In that case, the undercover/nontestifying officer radioed that he made a "positive observation" and "gave a detailed description of the clothing and physical characteristics of the participants (including defendant) as well as their location". The arresting/testifying officer explained that "the phrase 'positive observation' was commonly used among police officers to indicate an exchange of drugs for money and that she understood it to mean that [the undercover officer] had personally witnessed such an exchange at the time" (*id.*, at 947). Notably, before the arresting officer made the arrest, she received "a second radio communication from the observing officer indicating that the three men 'were the three involved in the drug transaction' " (*People v Washington*, 209 AD2d 560, *affd* 87 NY2d 945).

In the instant case, unlike *People v Petralia* (*supra*) and *People v Washington* (*supra*), the communication from the sending officer contained no physical description of defendant, one of four possible suspects, nor a descriptive account of his participation in any criminal activity. Thus, there is no exposition in the record of the factual basis for the sending officer's belief that defendant committed a crime so as to satisfy the basis-of-knowledge prong of the *Aguilar-Spinelli* test (*see, People v Parris*, *supra*, at 350). In making this finding, we wish to emphasize that we are not suggesting that Tanski should not have acted upon the prearranged "go" signal to effect defendant's warrantless arrest in the first instance. The law clearly cloaks him with the presumptive right to do so (*see, People v Rosario*, 78 NY2d 583, 588, *supra*; *People v Lypka*, 36 NY2d 210, 213). However, when, as here, the People rely upon the radio transmission as their only basis to establish probable cause at the suppression hearing, the substance of that communication must clearly satisfy both prongs of the *Aguilar-Spinelli* test or the arrest will fail.

Finally, we note that Tanski's personal observations were insufficient to justify a warrantless arrest (*see, People v Havelka*, 45 NY2d 636, 641). Consequently, we find that the People failed to sustain their burden at the suppression hearing of demonstrating that the police possessed the requisite probable cause to arrest defendant. Accordingly, we reverse defendant's

conviction, grant his motion to suppress and dismiss the indictment, as the People are not entitled to a second opportunity to present evidence dispositive of the issue (see, *People v Havelka*, supra, at 643-644).

In light of our decision, we need not address defendant's remaining argument.

White and Graffeo, JJ., concur.

Mikoll, J. (concurring). The People failed to sustain their burden of demonstrating that the police possessed probable cause to arrest defendant only because no information was conveyed to the arresting officer as to this defendant's participation, if any, in the actual drug sale. However, we find no deficiency in the substance of the communication to Investigator Stephen Tanski from his fellow officers or the manner in which it was conveyed. Tanski, upon whose testimony the People chose to exclusively rely at the suppression hearing, testified that the target vehicle contained four occupants, two of whom remained with the vehicle while the other two went upstairs (presumably to engage in the drug transaction). He could not recall whether defendant went inside or remained with the vehicle. In our view, probable cause was established only with respect to the two passengers who went upstairs. Having failed to identify defendant as one of the two, probable cause to arrest defendant was not established.

Carpinello, J., concurs. Ordered that the judgment is reversed, on the law, motion to suppress granted and indictment dismissed.