OPINION OF THE COURT
Joseph A. Grosso, J.
The defendant, charged with, inter alia, criminal sale of a *802 controlled substance in the fifth degree, has moved to suppress physical evidence and identification testimony obtained as a result of what he contends was an unlawful arrest in violation of his constitutional rights.
A Mapp / Gethers hearing was conducted before the Judicial Hearing Officer (JHO) on April 12, 2000. I have reviewed the findings of the JHO report dated April 17, 2000, which recommended that the defendant’s motion to suppress physical and identification testimony be denied. For the reasons that follow, I cannot uphold those recommendations and, accordingly, the defendant’s suppression motion is granted in all respects.
At issue in this case is whether the arresting officer’s testimony regarding an undercover’s observation of an exchange of pills for money, standing alone, can provide probable cause for an arrest. At the suppression hearing, the People’s only witness was Detective John Quinn, the arresting officer, who received information concerning an observation sale by the undercover officer. Based on a radio transmission from the undercover officer who had observed the defendant exchange an unspecified quantity of pills for money, Detective Quinn placed the defendant under arrest. Recovered from defendant’s person were two bottles containing methadone, 16 white pills, and a bottle of water containing methadone. The other individual was found with 11 Xanax pills and two bottles of methadone. Defendant is charged with one count of fifth degree criminal sale of a controlled substance (alprazolam), and two counts of fifth degree criminal possession (alprazolam and methadone).
While Detective Quinn was unsure of the “exact words” used by the undercover, Quinn was told, in effect, that “there was an exchange of money for pills at that location.” The undercover officer gave a description of the two men involved in the transaction and their location. These were the only details of the narcotics transaction which were relayed to Quinn, and no other evidence was adduced at the hearing concerning the circumstances surrounding the sale or the undercover’s personal observations of whether the location was a “drug-prone” location.
The hearing court found that the evidence adduced at the suppression hearing was sufficient to establish probable cause. I respectfully disagree.
It is well recognized that the hearsay testimony of an arresting officer alone may be sufficient to make a probable cause determination at a suppression hearing without requiring the presence of the undercover officer. (See, People v Ketcham, 93 *803 NY2d 416 [1999]; People v Washington, 87 NY2d 945 [1996]; People v Petralia, 62 NY2d 47 [1984], cert denied 469 US 852 [1984].) The presumption of probable cause is imputed or passed on to the receiver or fellow officer acting in response to a radio bulletin. (People v Lypka, 36 NY2d 210, 213 [1975].) Under the fellow-officer rule, the People can rely upon the hearsay testimony of the officer receiving the information “ ‘ “provided that the police as a whole were in possession of information sufficient to constitute probable cause for an arrest.” ’ ” (People v Ramirez, 234 AD2d 398, 399 [2d Dept 1996], lv denied 89 NY2d 988 [1997], citing People v Ramirez-Portoreal, 88 NY2d 99, 113 [1996].) In focusing on the nature and reliability of the information possessed by the sender, “[u]nless that officer or agency is shown to have possessed probable cause, the warrantless arrest based upon that transmission may not stand.” (People v Rosario, 78 NY2d 583, 589 [1991], cert denied 502 US 1109; see also, People v Chaney, 253 AD2d 562 [3d Dept 1998].)
However, as was the case here, where the sufficiency of the information received by the arresting officer is challenged, the presumption of probable cause disappears and the People bear the burden of coming forward with additional evidence to establish probable cause. (See, People v Mims, 88 NY2d 99, 113-114 [1996]; People v Rosario, 78 NY2d, supra, at 588; People v Chaney, supra; People v Hummer, 228 AD2d 783 [3d Dept 1996].) The People chose to meet their burden in the instant case by relying solely upon the hearsay testimony of their only witness, Detective Quinn. This evidence, however, falls short of the threshold requirements establishing probable cause.
Specifically, the People failed to demonstrate that the mere exchange of an unspecified number of pills for money, without more, rises to the level of probable cause as a matter of law and justifies the warrantless arrest of a citizen based on that fact alone. In drug cases involving street level hand-to-hand exchanges, courts have consistently relied upon an assessment of various factors in making probable cause determinations, including, but not limited to, the exchange of currency, whether the area is a drug-prone location, an officer’s training and experience in drug investigations, any evidence of furtive or evasive behavior, and whether the object being exchanged bears the “hallmark” of an illicit drug transaction. (See, People v McRay, 51 NY2d 594 [1980]; People v Jones, 90 NY2d 835 [1997].) In the 20 years since McRay, Fourth Amendment jurisprudence in drug cases has sought to keep pace with the *804 ever-shifting permutations of the drug trade, given the “virtual explosion in drug trafficking in our society.” (People v McRay, supra, at 602-603.) An example of the shifts in probable cause analysis is illustrated by the Court of Appeals opinion in People v Jones (supra). There, the Court held that even where the undercover observed only an exchange of an unidentified object for money, the absence of a “ ‘telltale sign’ of narcotics” was not considered fatal to a finding of probable cause when considered in relation to other factors present in the case, such as the location of the sale, the training and experience of the officers, the exchange of currency and the behavior of the parties engaged in the sale. (Supra, at 837.) Although Jones did not articulate a different standard in probable cause determinations, the analysis undoubtedly hinged on an evaluation of the “totality of the circumstances.” (See, supra; People v Barnes, 249 AD2d 227 [1st Dept 1998]; People v Schlaich, 218 AD2d 398 [1st Dept 1996].)
An analysis based on the totality of the circumstances, however, assumes a factual context in which .to evaluate the inference of probable cause, a context which was sorely lacking in this case. The People relied upon the conclusory hearsay statement transmitted by the undercover officer without any supporting evidence concerning context or circumstance to enable a hearing court to make a probable cause determination. (See, People v Dodt, 61 NY2d 408 [1984] [reviewing court must be supplied with sufficient evidence to make its own independent determination concerning the validity of the warrantless arrest or search].)
In contrast to McRay (supra) and its progeny, two very critical factors relied upon by the courts in assessing the predicate for a warrantless arrest — the expertise of the observing officer and the location of the alleged sale — were missing here. (See, People v Williams, 255 AD2d 133 [1st Dept 1998] [observation by experienced officer of exchange of several small bags for money in a drug-prone location]; People v Dukes, 254 AD2d 149 [1st Dept 1998] [furtive exchange of unidentified object for money in area with high incidence of narcotics trafficking observed by experienced officer]; People v Valdes, 244 AD2d 268 [1st Dept 1997] [experienced officer observed three exchanges of “ ‘shiny objects,’ ” presumed to be crack vials, for money in a drug-prone location].) There was no evidence concerning the incidence of drug activity in the area in which the observation was made, and Quinn never testified that it was a drug-prone location. In fact, Quinn described the area as *805 a busy, mixed, commercial and residential street where he had observed well-dressed people coming out of a church located on that block.
Nor was any testimony provided about the relevancy of the officer’s buy and bust operation to the undercover’s particular observations: whether their investigative efforts included the sale of illegal pills, and whether they were specifically targeting such activity that day. Likewise, there was no evidence pertaining to the undercover’s training and experience with respect to illegal pill distribution or street sales, and it was therefore impossible to determine whether the officer’s observation of the exchange was an anomaly, or part of his normal operations. (See, People v Jones, 90 NY2d, supra, at 837 [exchange giving rise to probable cause observed by an experienced officer “trained in the investigation and detection of narcotics,” in their packaging, recognition and manner of sales]; People v Williams, 255 AD2d 133 [1st Dept 1998], supra [probable cause established where officer, “based on his extensive law enforcement experience,” believed that small bags being exchanged for money in drug-prone location were the type used to package crack-cocaine]; see also, People v Houser, 151 Mich App 294, 390 NW2d 674 [1986] [probable cause existed where officer testified that he had experienced prior transactions of controlled substances, particularly pills, in same location, and that prior experience suggested that loose pills removed from vial contained a controlled substance].)
There are no reported cases in New York State involving the street sales of pills and the quantum of proof necessary to establish probable cause under these circumstances. In the small number of cases addressing this issue, courts in other jurisdictions, as with the courts of this State, have required much more than the evidence proffered at bar to sustain a probable cause determination. (See, United States v Davis, 561 F2d 1014 [DC Cir 1977] [probable cause determination upheld where experienced officer knowledgeable about street sale of phenmetrazine tablets, observed defendant, during stake-out in area known for narcotics activity, exchange money for small objects taken from a small manila envelope to three different men and subsequently observed one of the men holding several pink pills in his fist]; Peterkin v United States, 281 A2d 567, 569 [DC App 1971] [probable cause established where officer observed defendant exchange “something” from a vial in return for money in a “high narcotic area”]; People v Houser, supra [probable cause existed where officer, with prior experience in *806 pill transactions, observed defendant receive several white pills from vial in location with prior narcotics activity].)
Thus, without more, it cannot be said that the exchange of pills for money supports a finding of probable cause as a matter of law. Notwithstanding “[t]he alarming pervasiveness of drugs in our society” (People v McRay, 51 NY2d 594, 603, supra), the mere suspicion of criminal behavior, however likely, does not “provide the occasion for obliterating the protections afforded by the Fourth Amendment and our State Constitution.” (Supra, at 603.) However questionable on its face, the exchange of pills for cash is nevertheless conduct which might be susceptible to innocent interpretation. Certain key facts concerning the nature of the exchange were missing which would have been relevant to an assessment of probable cause, such as the number of pills exchanged, the type of pills, whether they were “loose” or transferred in a container, or other details to support the inference that the pills might have been a controlled substance. (See, United States v Davis, 561 F2d 1014; People v Houser, 151 Mich App 294, 390 NW2d 674, supra.) Thus, while I find, at most, that reasonable suspicion existed in the instant case, the' People have failed to present facts sufficient to elevate the conduct at issue to the level of probable cause.
In conclusion, it should be noted that the People cannot hide behind the cloak of the “fellow-officer” hearsay rule when the record itself fails to establish a factual basis to make a probable cause determination. (Cf., People v Ketcham, 93 NY2d 416, supra; People v Washington, 87 NY2d 945, supra; People v Maldonado, 86 NY2d 631.)
Accordingly, the defendant’s motion to suppress physical evidence recovered as a result of the warrantless arrest is granted. Similarly, the identification evidence, which is a fruit of the illegal arrest, is also suppressed (People v Gethers, 86 NY2d 159 [1995]).