(May 24, 2001)

■ The People of the State of New York, Respondent, v Gerald Ovitt, Appellant. [726 NYS2d 156] —Cardona, P. J. Appeal from a judgment of the County Court of Washington County (Hemmett, Jr., J.), rendered September 5, 1997, upon a verdict convicting defendant of the crime of rape in the third degree.

Defendant, born in 1941, was convicted after trial of rape in the third degree based upon his sexual contact with his live-in female companion's oldest daughter, born in 1979. The victim, who left her home in September 1995 to live with her grandparents, spoke with the State Police approximately a year later concerning allegations that she and defendant had sexual contact on several occasions, including sexual intercourse in June 1995. As a result of her statements, the State Police conducted several interviews with defendant and the victim's mother during October and November 1996, culminating in an

interview with State Police Investigator Thomas Aiken at defendant's residence on November 15, 1996. After conversing with defendant about the victim's allegations, defendant was read his *Miranda* rights, waived them in writing and signed a statement. In that statement, he acknowledged some inappropriate touching of the victim in June 1995 and at unspecified other times, but he did not admit to sexual intercourse. Defendant's subsequent motion to suppress the statement was denied following a *Huntley* hearing. After trial, a jury convicted defendant of rape in the third degree relating to the June 1995 incident. He was sentenced to 1⅓ to 4 years in prison. Defendant appeals.

Initially, defendant maintains that County Court erred in denying his pretrial motion to suppress the November 15, 1996 inculpatory written statement. Defendant contends that the statement was the involuntary product of unlawful custodial detention and obtained after his right to counsel attached. We find these arguments unpersuasive.

Significantly, the determination of custody requires application of an objective standard of "what a reasonable [person], innocent of any crime, would have thought had he been in the defendant's position" (*People v Yukl*, 25 NY2d 585, 589, *cert denied* 400 US 851; *see, People v Pulliam*, 258 AD2d 681, 682, *lv denied* 93 NY2d 977). Here, the record reveals that Aiken had probable cause to question defendant based upon the victim's sworn allegations. On November 15, 1996, Aiken and State Police Investigator Sandy Pane arrived at defendant's residence to speak with him and his companion, the victim's mother. While Pane spoke to the mother, Aiken went to defendant's home workshop and introduced himself to defendant. After discussing the victim's statement, Aiken indicated that he was cold and suggested that they continue speaking in the front seat of Aiken's unmarked police vehicle.

Aiken testified that defendant told him that the victim's allegations were true, but he would not sign a statement until he had an idea as to sentence.* Aiken said he did not know, but that he could have the District Attorney speak to him. Defendant and Aiken then went into defendant's home where defendant spoke on the telephone with the District Attorney. Aiken testified that, after defendant got off the telephone, he relayed

---

* Aiken stated at one point that he showed or discussed with defendant an unsigned search warrant application relating to the victim's accusation that defendant had exposed her to pornographic movies and sex toys while she lived in his home. The warrant was never executed and no search of defendant's home was conducted.

that the District Attorney "told him he would do a minimum one year and the [District Attorney] had agreed not to charge him until after the holidays." At that time, Aiken read defendant his *Miranda* rights, which he waived in writing. Defendant then narrated a statement transcribed by Aiken which, although acknowledging inappropriate touching of the victim, fell short of admitting to intercourse. After defendant signed the statement and initialed certain changes, the investigators left defendant's residence without arresting him. Defendant was thereafter arrested on February 20, 1997.

Contrary to defendant's arguments, we cannot say that County Court's factual determination that defendant was not in custody prior to making the statement in question "is erroneous as a matter of law or unsupported by the record" (*People v Smith*, 214 AD2d 845, 847, *lv denied* 86 NY2d 741; *see, People v Pulliam, supra*). The questioning took place at defendant's home in a noncustodial setting in which defendant was free to leave at any time and free to discontinue speaking. We also do not agree that defendant's statement was the product of psychological coercion. Defendant testified at the suppression hearing that the victim's mother, who apparently suffers from depression, was so emotionally distraught and incoherent when he returned to the house with Aiken that he was willing to agree to anything in order "to get [Aiken] out of the house" so he could take care of her. In contrast, although Aiken acknowledged that the victim's mother did seem generally nervous and upset, he testified that "the only time that she appeared * * * visibly upset or shaken is when she heard out of [defendant's] mouth for the first time * * * that the allegations were true or at least part of them were true." Notably, a court's findings in a suppression hearing are accorded great weight (*see, People v Allen*, 147 AD2d 968, *lv denied* 73 NY2d 1010) and we find no reason to disturb the findings of County Court.

Furthermore, "we find insufficient evidence of any promises or threats made to defendant or an atmosphere of intimidation which overcame defendant's will" (*People v Edwards*, 274 AD2d 754, 759, *lv granted* 95 NY2d 963; *see*, CPL 60.45 [2] [b] [i]). To the extent that defendant argues that his confession was induced as a result of his telephone conversation with the District Attorney, we note that this argument was not specifically advanced before the suppression court. In any event, defendant's testimony was that the District Attorney only mentioned something about "a year," not that he was promised a specific sentence. In addition, Aiken stated that he made no

promises or threats to defendant regarding his statement. "Viewing the totality of the circumstances, we conclude that the People proved the voluntariness of defendant's statements beyond a reasonable doubt [citation omitted]" (*People v Edwards, supra,* at 759).

Defendant also argues that his written statement should be suppressed because it was signed after his right to counsel attached. However, defendant failed to preserve this issue by raising it at the suppression hearing (*see, People v Tutt,* 38 NY2d 1011, 1012-1013). In any event, since defendant's statement was not the product of a custodial interview, the right to counsel with respect to his waiver of his right to remain silent never attached (*see, People v West,* 81 NY2d 370, 373; *People v Grant,* 260 AD2d 860, *lv denied* 93 NY2d 1019). Moreover, the evidence does not show an unequivocal invocation of either his right to remain silent or right to counsel (*see, People v Hicks,* 69 NY2d 969).

Turning to the additional issues raised in defendant's *pro se* brief, including his claims of prosecutorial misconduct and violations of the *Rosario* rule, we conclude that, to the extent that they have been preserved for appellate review, they are similarly without merit. For example, with respect to the credibility of witnesses, there is simply no support for defendant's claim that the witnesses against him, including the victim, were incredible as a matter of law. Notably, the evidence showed that defendant admitted some level of sexual contact with the victim in June 1995 and the jury was within its province in crediting the victim's direct testimony that penetration occurred. Furthermore, we are unpersuaded that defendant was denied the effective assistance of counsel. Lastly, defendant's sentence was proper and we find no reason, upon this record, to disturb it.

Crew III, Peters, Spain and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.