(December 20, 2001)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RENEE MITCHELL, Appellant. [734 NYS2d 353] —Cardona, P. J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered July 6, 2000, upon a verdict convicting defendant of the crime of murder in the second degree.

On July 19, 1999, at approximately 5:30 P.M., paramedics and the police responded to a 911 call that defendant's three-month-old daughter was unconscious and her head was swollen. The infant was in respiratory distress and exhibited signs of head trauma. Defendant told the paramedics that the baby had fallen off a sofa. The child was immediately transported to a hospital where it was determined that she sustained multiple skull fractures and bleeding within the brain. Unfortunately, the child died the next day.

The record reveals that after defendant's daughter was transported to the hospital, defendant remained behind and told City of Albany Police Officer Michael Romano that she was in a back bedroom of the apartment of her neighbor, David Dunham, while her infant daughter and two-year-old son were on a sofa in the living room. She indicated that she heard thuds and came out to find her daughter unresponsive on the floor. Romano thereafter transported defendant to the hospital and, after arriving, defendant was questioned by Albany Police Detective Thomas Kubisch. Defendant essentially reiterated her version of the events about the baby falling off the sofa and also expressed concern that her two-year-old son may have been responsible for the infant's injuries. After privately speaking with the physicians and ascertaining that the baby's injuries could not have been inflicted by a two-year-old child, Kubisch obtained defendant's consent to search her apartment and left the hospital. Defendant remained in the waiting room with her mother and son. Returning to the hospital at around

8:00 P.M., Kubisch asked defendant to accompany him to the police station and defendant agreed.

At the station, Kubisch and defendant spoke for about an hour resulting in defendant giving a written statement in which she again indicated that, after hearing thuds from the living room, she went to investigate and found her daughter unconscious on the floor. Defendant then went home and at about 1:00 A.M. was roused by Kubisch. She again agreed to join him at the station for questioning. Apparently Dunham had also been questioned by police and Kubisch wanted to discuss with defendant certain inconsistencies in their statements. After defendant arrived, she was administered *Miranda* warnings and agreed to waive her rights. After over two hours of questioning, defendant gave another written statement between 3:35 A.M. and 4:50 A.M. In that second statement, defendant admitted, *inter alia*, that, between 10:00 A.M. and 11:00 A.M. on July 19, 1999, she was alone with her daughter when the child began to cry. Defendant stated that, out of frustration, she repeatedly banged her daughter's head against the wall on two separate occasions for approximately one minute each time. Defendant also wrote a note apologizing to her daughter. Thereafter, the police took her home and told her she could call the station for a ride to the hospital in the morning. Defendant contacted an attorney the next morning and was later arrested after the infant died.

Defendant was indicted on one count of murder in the second degree and one count of manslaughter in the first degree on July 27, 1999. Defendant moved, *inter alia*, to suppress her various statements to the police, which motion was denied after a suppression hearing. Following a jury trial, defendant was convicted of murder in the second degree under circumstances evincing a depraved indifference to human life (*see,* Penal Law § 125.25 [4]). Defendant was sentenced to an indeterminate prison term of 25 years to life.

Defendant primarily argues on this appeal that County Court erred in refusing to suppress the written and oral statements that she made to the police. The crux of defendant's contention is that she was arrested without probable cause and, alternatively, that her statements were rendered involuntary by the "accusatorial, coercive and intimidating interrogation" that she was subjected to by Kubisch. Upon review of the record, we do not agree.

At the outset, we are unpersuaded by defendant's characterization that the entirety of her interaction with the police following their response to the 911 call was a single protracted

custodial event. Notwithstanding defendant's allegations that she felt as if she was under the complete dominion of the police at all times during the night and early morning hours of July 19 and 20, 1999, County Court properly determined that defendant was not in custody until the time of her second written statement. A defendant's subjective feelings are not dispositive on the issue of custody. Rather, the analysis must be an objective one, i.e., would a hypothetical reasonable and innocent person consider himself or herself in custody (*see, People v Centano*, 76 NY2d 837, 838; *People v Yukl*, 25 NY2d 585, 589, *cert denied* 400 US 851). "The factors to be considered in applying this standard include the amount of time the person spent with the police, whether his or her freedom of action was significantly restricted, the location of the questioning and the atmosphere under which it was conducted, the person's degree of cooperation, whether he or she was apprised of his or her constitutional rights and whether the questioning was investigatory or accusatory in nature" (*People v Hardy*, 223 AD2d 839, 840 [citation omitted]).

Significantly, prior to the time of her second statement, defendant's movements were never impaired nor was she ever forced to accompany the police. Indeed, as confirmed by defendant's own characterization of her encounters with Kubisch, the police never indicated suspicion regarding defendant until the time of her second statement. Moreover, during the questioning surrounding her second statement, defendant was properly administered *Miranda* warnings and stated that she understood them. Accordingly, County Court did not err in determining that defendant was not in custody prior to the taking of the second statement and all earlier oral and written statements were the product of appropriate investigative inquiries (*see, People v Mayerhofer*, 283 AD2d 672, 673-674).

We are also unpersuaded that the second statement, as well as the handwritten apology note, were the product of an "overwhelmingly coercive interrogation" by Kubisch that intimidated defendant to the point that her will was overborne and she confessed to a crime she did not commit. Notably, there is no indication that defendant was offered inducements which might cause her to falsely incriminate herself (*see, People v Johnson*, 177 AD2d 791), nor was the three to four-hour period of questioning giving rise to her second statement particularly long in duration (*compare, People v Anderson*, 42 NY2d 35). Although Kubisch admitted that he raised his voice at times during the course of the interview and defendant claims to have been "really upset" and was "shaking" and "cry-

ing," viewed in the totality of the circumstances, we conclude that the voluntariness of defendant's statements was proved beyond a reasonable doubt (*see, People v Ovitt*, 283 AD2d 832, 835, *lv denied* 96 NY2d 905; *People v Blanchard*, 279 AD2d 808, 810, *lv denied* 96 NY2d 826; *see also*, CPL 60.45).

Next, defendant argues that the People failed to adduce legally sufficient evidence to establish murder in the second degree. The appropriate standard for measuring the legal sufficiency of the evidence in a criminal matter is whether, when viewed in a light most favorable to the People, the evidence supports a finding by a rational finder of fact that every element of the charged offense has been proven beyond a reasonable doubt (*see, People v Carroll*, 95 NY2d 375). Here, given the admissibility of defendant's statements to the police and the corroboration thereof by the medical and physical evidence at trial, we find that the evidence was legally sufficient to support the guilty verdict (*see*, CPL 60.50; *People v Guillery*, 260 AD2d 661, *lv denied* 93 NY2d 971).

Defendant next contends that she was improperly denied her request for disclosure of a letter that she wrote from jail to Dunham in July 1999 which was later used by the People during cross-examination of defendant. Assuming, arguendo, that this issue is preserved for appellate review, we conclude that defendant was not entitled to disclosure pursuant to CPL 240.20.* Generally, an accused's "[s]tatements made to civilian witnesses are not discoverable" (*People v Swart*, 273 AD2d 503, 504, *lv denied* 95 NY2d 908; *see, People v Rivera*, 210 AD2d 178, *lv denied* 85 NY2d 865). Under the circumstances herein, Dunham's relationship with the police does not meet the criteria for disclosure under CPL 240.20 and, therefore, County Court did not err in denying defendant's motion to compel discovery of the letter (*see, Matter of Sacket v Bartlett*, 241 AD2d 97, 101-102, *lv denied* 92 NY2d 806).

Turning to defendant's challenges to the imposed sentence, we find them to be unpersuasive. As defendant's sentence was clearly within the guidelines available to County Court, defendant's sentence is not cruel and unusual under the US or NY Constitutions (*see, People v Gadsden*, 273 AD2d 701, *lv denied* 95 NY2d 934; *see also, People v Jones*, 39 NY2d 694, 697). Defendant also contends that the imposed sentence was

---

* CPL 240.20 (1) (a) requires the People to disclose, upon defendant's request, "[a]ny written * * * statement of the defendant * * * made, other than in the course of the criminal transaction, to a public servant engaged in law enforcement activity or to a person then acting under [the public servant's] direction or in cooperation with [the public servant]."

harsh, excessive and an abuse of discretion because it was the maximum sentence for her crime and because she has no previous criminal history. "Where a sentence is within permissible statutory ranges, it will not be disturbed unless the sentencing court abused its discretion or extraordinary circumstances exist warranting modification" (*People v Hines*, 277 AD2d 504, 505, *lv denied* 96 NY2d 759 [citations omitted]). Here, given the brutal nature of the crime perpetrated on a helpless infant and the evidence presented, we find no reason to disturb the sentence imposed by County Court (*see, People v Millard*, 279 AD2d 807, *lv denied* 96 NY2d 803).

All remaining arguments raised by defendant and not specifically addressed herein have been examined and found to be without merit.

Mercure, Crew III, Carpinello and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.