THIRD DEPARTMENT, MAY, 2002

(May 2, 2002)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHYMEL CURRY, Appellant. [741 NYS2d 324] —Mugglin, J. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered January 5, 1999, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts), attempted robbery in the first degree (two counts) and attempted robbery in the second degree (two counts).

Based on testimony that he was present at the scene and participated in attempts to rob two young victims who were shot and killed by one of his companions, defendant was convicted after a jury trial of two counts of murder in the second degree (felony murder) and two counts each of attempted robbery in the first and second degrees. Defendant was sentenced to consecutive indeterminate terms of imprisonment of 25 years to life on each of the felony murder convictions, an indeterminate term of 7½ to 15 years on each of the first degree attempted robbery convictions, and indeterminate terms of 3½ to 7 years on each of the second degree attempted robbery convictions. Defendant appeals.

Initially, we find no merit to defendant's contention that the convictions are against the weight of the evidence because the People failed to prove beyond a reasonable doubt that he had the requisite intent to commit any of these crimes. Since our review of the record suggests that a contrary result would not have been unreasonable, we are required to "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Bleakley*, 69 NY2d 490, 495, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62; *see*, *People v Rayam*, 94 NY2d 557, 560; *People v Krug*, 282 AD2d 874, 878). Here, the conflict occurs by comparing the trial testimony of Aaron Bebo, a participant in the crimes who testified for the prosecution as a condition of a plea bargain, with defendant's version of the events, as contained in his statement to the police and his sworn Grand Jury testimony, both of which were admitted into evidence. Bebo's testimony was that defendant was a knowing, voluntary and intentional participant, while defendant said that he had no direct participation in the robbery, claiming instead that he left the scene as it commenced, having unsuccessfully attempted to convince his companions to abandon the robbery plan. Bearing in mind that great deference is accorded to the credibility determinations made by the trier of the facts (*see*, *People v Hodge*, 290 AD2d 582, 583), we conclude that the probative force of the conflicting testimony demonstrates the presence of the requisite intent under each charge. A murder committed during the commission of a designated felony does not require proof of intent to commit the murder. The intent necessary to sustain such conviction arises from that necessary to commit the underlying felony (*see*, *People v Stokes*, 88 NY2d 618, 623). Thus, in order to sustain each of the convictions, the evidence must establish, beyond a reasonable doubt, that defendant committed or attempted to commit a robbery together with proof that the death

of a nonparticipant occurred during the robbery (*see*, Penal Law § 125.25 [3]).

Here, the jury clearly accepted the prosecution's evidence that defendant agreed with the other participants to go to the City of Albany to rob people and that, although defendant did not commit the murders, they occurred during his participation in the attempted robbery of the two victims. In this regard, our review of the record reveals no basis upon which to reject the jury's decision to accept the prosecution's evidence on this issue and to reject defendant's version of the incident. Bebo's testimony was neither patently incredible nor unworthy of belief as a matter of law (*see*, *People v Stokes*, 290 AD2d 71, 73-74; *People v Mann*, 216 AD2d 796, 798, *lv denied* 86 NY2d 797). Since it appears that the jury gave the evidence the weight it should be accorded, we reject defendant's contention (*see*, *People v Ward*, 282 AD2d 819, 820, *lv denied* 96 NY2d 942).

Next, defendant asserts that the statements given to the police should have been suppressed as his warrantless arrest was made without probable cause. In order to effectuate such an arrest, a police officer must have reasonable cause to believe that the person has committed a crime (*see*, CPL 140.10 [1] [b]). "Reasonable cause means probable cause * * * [and] exists when an officer has knowledge of facts and circumstances 'sufficient to support a reasonable belief that an offense has been or is being committed'" (*People v Maldonado*, 86 NY2d 631, 635, quoting *People v Bigelow*, 66 NY2d 417, 423 [citation omitted]; *accord*, *People v Chaney*, 253 AD2d 562, 565). Prior to taking defendant into custody at his girlfriend's apartment in the City of Troy, Rensselaer County, the police obviously knew that two homicides had been committed. They were also aware that an individual had been observed running from the scene of the crimes and entering a red Oldsmobile Achieva bearing a Pennsylvania license plate, which vehicle had been rented to Nadine Thomas. The police interview of Thomas revealed that she had loaned the vehicle to her nephew, defendant. Additionally, Thomas informed the police that defendant had telephoned her son (at a time after the murders) and instructed him to report that the car had been stolen. Further, the police were cognizant of the fact that defendant and Bebo hailed a cab four blocks from the scene of the murders and proceeded to Troy. The taxi driver informed the police that his fares seemed nervous and agitated and identified defendant as an individual who stated during the taxicab ride "that s**t made me sick" to which the other fare responded "shut the

f\*\*k up." In addition, the police knew of the flight of the individuals in possession of the vehicle loaned to defendant and that a weapon was found in close proximity to the scene of the crime. Considered in the aggregate, it becomes clear that, although these facts are not sufficient by themselves to warrant a conviction beyond a reasonable doubt, they convincingly establish probable cause for the warrantless arrest of defendant. Accordingly, we reject defendant's assertion that the police lacked probable cause for his arrest and that County Court erred in failing to grant his motion to suppress the statements given by him to the police (*see, People v Bigleow, supra* at 423; *People v Chaney, supra* at 562).

We next address defendant's argument that he failed to receive meaningful representation at trial. It is well settled that "[s]o long as the evidence, the law and the circumstances of a particular case, viewed in totality * * *, reveal that the attorney provided meaningful representation," any claim of ineffective assistance of counsel must be rejected (*People v Baldi*, 54 NY2d 137, 147). While the concept of meaningful representation is a flexible one, incapable of precise definition (*see, People v Benevento*, 91 NY2d 708, 712; *People v Dove*, 287 AD2d 806, 808), it is fundamental that in order to prevail on such a claim, defendant must establish that the inadequacy of his representation substantially impinged upon his right to a fair trial (*see, People v Powers*, 262 AD2d 713, 716, *lv denied* 93 NY2d 1005). Losing trial tactics or strategy and unsuccessful attempts to advance defenses do not rise to the level of ineffectiveness (*see, People v Henry*, 95 NY2d 563, 565-566). Defendant points to the failure of trial counsel to pursue the affirmative defense of renunciation, counsel's concession on the issue of *Miranda* warnings and counsel's alleged failure to effectively cross-examine Bebo as errors that, when considered together, so impair his right to a fair trial as to constitute a violation of his constitutional right to effective assistance of counsel (*see, People v Droz*, 39 NY2d 457, 462-463). Applying these familiar rules to this trial, we conclude that defendant received meaningful representation.

In regard to the defense of renunciation, it is apparent that trial counsel made a reasoned determination that such a defense could not be established and that defendant would not be entitled to a charge to the jury with respect thereto. To establish this affirmative defense (*see,* Penal Law § 25.00 [2]), defendant would be required to demonstrate that he withdrew from participation in the offense prior to commission thereof and "made a substantial effort to prevent [its] commission"

(Penal Law § 40.10 [1]; *see, People v Ozarowski*, 38 NY2d 481, 492). Even were we to credit defendant's version of the events, he established only that he claims to have withdrawn prior to the commission of the underlying robberies. Totally lacking is evidence which would support the conclusion that he made a substantial effort to prevent the commission thereof. Accordingly, we find no ineffectiveness in trial counsel's failure to pursue this defense.

Equally unpersuasive is defendant's contention that trial counsel failed to effectively cross-examine witnesses. The record reveals that trial counsel conducted a detailed, searching and extensive cross-examination of the People's witnesses both during the suppression hearing and trial. Further, trial counsel effectively probed the prosecution's key witness with respect to his credibility by revealing his potential prejudices and extensive criminal background. Lastly, trial counsel's decision not to pursue suppression of defendant's statements due to the alleged absence of *Miranda* warnings appears to have been a tactical one, primarily because there existed no good faith basis for doing so. Accordingly, we conclude that contrary to defendant's claims, he received meaningful representation.

Finally, there is no merit to defendant's contention that the sentences imposed were either harsh or excessive. The sentences are within the statutory ranges and the record reveals no abuse of discretion or extraordinary circumstances warranting modification (*see, People v Mitchell*, 289 AD2d 776, 780; *People v Dolphy*, 257 AD2d 681, 685, *lv denied* 93 NY2d 872). The fact that County Court sentenced defendant to consecutive terms with respect to the murder convictions creates no infirmity in the sentence (*see*, Penal Law § 70.25; *People v Braithwaite*, 63 NY2d 839, 842-843; *People v Walker*, 279 AD2d 696, 698-699, *lv denied* 96 NY2d 869). Although defendant is young and lacks prior criminal involvement, the heinous nature of the senseless, execution-style murders of two young people warrants the sentences imposed.

Cardona, P.J., Mercure, Carpinello and Rose, JJ., concur. Ordered that the judgment is affirmed.