■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYSOMON JACKSON, Appellant. [954 NYS2d 679]—

Mercure, J.P. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered March 25, 2010, upon a verdict convicting defendant of the crimes of murder in the second degree and criminal possession of a weapon in the second degree.

In February 2009, the frozen body of the victim was found lying among piles of garbage in a long abandoned building at 810 Broadway in the City of Albany. The victim had been killed by a gunshot wound to the head. Following the discovery of the

victim's blood in defendant's vehicle—which had been found nearby, on fire, in January 2009—defendant was charged in an indictment with one count each of murder in the first degree, murder in the second degree (felony murder), robbery in the first degree and criminal possession of a weapon in the second degree. The matter proceeded to a jury trial, at the close of which defendant was acquitted of murder in the first degree, but convicted of felony murder and criminal possession of a weapon in the second degree. He was sentenced, as a second felony offender, to an aggregate prison term of 25 years to life, to be followed by five years of postrelease supervision. Defendant appeals, and we now affirm.

Initially, we reject defendant's argument that the verdict was against the weight of the evidence. "Necessarily, in conducting [a] weight of the evidence review, [we] . . . consider the elements of the crime, for even if the prosecution's witnesses were credible[,] their testimony must prove the elements of the crime beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 349 [2007]). As relevant here, a person is guilty of felony murder when "he [or she] commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, he [or she] . . . causes the death" of another person (Penal Law § 125.25 [3]). "A person is guilty of criminal possession of a weapon in the second degree when . . . such person possesses any loaded firearm" other than in the "person's home or place of business" (Penal Law § 265.03 [3]).

Here, the record reveals that the victim and his friend Ezekiel Mohammed drove from New York City, where they resided, to the home of the victim's parents in the City of Schenectady, Schenectady County on the night of January 28, 2009. The victim was interested in buying two ounces of marihuana to resell in New York City and sought the assistance of his brother, Tyrone Torak, in locating a seller. Torak observed that the victim had a large amount of cash and contacted his friend Tamieka Scott, who—through various intermediaries—arranged a meeting between the victim and defendant outside her home on Lark Drive in Albany. There is no dispute that the victim entered defendant's car, inspected his marihuana and then returned to wait in Mohammed's car after defendant indicated that he had less than two ounces of marihuana but would return later with more.

Although defendant further testified that he was unable to locate any more marihuana and, therefore, never returned, Scott testified that she watched from her bedroom window as defend-

ant did return alone about 45 minutes later and parked behind Mohammed's car, facing the other direction. She saw the victim open the car door and enter defendant's vehicle, saw defendant's face as the door opened and, 15 to 20 seconds later, she heard gunfire and saw a flash of light. Mohammed also testified that he heard gunfire about 15 to 20 seconds after the victim had entered defendant's car and that he subsequently saw a man exit the car and point a gun at him. Scott saw the vehicles speed off in opposite directions, and she then called 911.

Firefighters responded to a fire in defendant's green 1993 Honda—which was nominally owned by his brother but used almost exclusively by defendant—at approximately 7:30 a.m. the next morning. The fire had started near the front passenger seat of the vehicle and heavily damaged that area. Although the vehicle was deemed unsalvageable, sold to a scrapyard and crushed, police tracked down the crushed car after the victim's body was discovered and, as noted above, found that the passenger compartment contained a small amount of the victim's blood. While defendant's expert testified that a gunshot to the head would have resulted in more blood than the amount discovered in the car, the expert ultimately conceded that the victim's sweatshirt could have soaked up a large amount of blood and that the car fire may have destroyed some of the blood evidence. Notably, although the victim had been seen with a large amount of cash before meeting with defendant, no money was found on his body when it was recovered.

The foregoing evidence established that defendant caused the victim's death in the course of and in furtherance of a robbery or attempted robbery (*see People v Curry*, 294 AD2d 608, 609-610 [2002], *lv denied* 98 NY2d 674 [2002]; *see also People v Perez*, 93 AD3d 1032, 1035-1036 [2012], *lv denied* 19 NY3d 1000 [2012]), and that defendant possessed a loaded firearm that he fired at the victim in his vehicle (*see People v Hernandez*, 89 AD3d 1123, 1124-1125 [2011]; *People v Bellamy*, 26 AD3d 638, 639-640 [2006]). Contrary to defendant's argument, the People were not required to demonstrate that he intended to kill the victim in order to prove felony murder (*see People v Stokes*, 88 NY2d 618, 623 [1996]); nor does the absence of the actual murder weapon preclude a conviction for criminal possession of a weapon (*see People v Bianca*, 91 AD3d 1127, 1128 [2012], *lv denied* 19 NY3d 862 [2012]). Moreover, defendant's unsupported testimony that, at the time of the shooting, he was with a woman named Angie—whom he had just met and never saw again, and who could not be located—"presented a classic credibility issue for the jury to resolve" (*People v Moyer*, 75 AD3d

1004, 1006 [2010] [internal quotation marks and citations omitted]), and we give great deference to the jury's credibility determination (*see People v Romero*, 7 NY3d 633, 644-645 [2006]). Accordingly, upon viewing the evidence in a neutral light, and weighing the conflicting testimony and the rational inferences that can be drawn from the proof at trial, we conclude that the jury was justified in finding defendant guilty beyond a reasonable doubt (*see People v Danielson*, 9 NY3d at 348; *People v Romero*, 7 NY3d at 643-644).

Defendant's remaining arguments do not require extended discussion. County Court did not abuse its discretion in permitting, after a combined *Sandoval* and *Molineux* hearing and with proper limiting instructions, evidence of defendant's 2005 conviction of criminal sale of a controlled substance in the fifth degree and his involvement in the drug trade. The testimony regarding defendant's drug dealing activities provided essential background narrative explaining the victim's relationship to defendant and the other witnesses, as well as his presence in defendant's vehicle; the evidence also demonstrated defendant's opportunity to commit the crime, and was inextricably interwoven with the charged crimes (*see People v Burnell*, 89 AD3d 1118, 1120-1121 [2011], *lv denied* 18 NY3d 922 [2012]; *People v Lee*, 80 AD3d 877, 880 [2011], *lv denied* 16 NY3d 833 [2011]; *People v Smith*, 63 AD3d 1301, 1303 [2009], *lv denied* 13 NY3d 862 [2009]). Furthermore, the prior drug sale conviction was relevant to defendant's credibility inasmuch as it reflected his willingness to place his own interests above those of society (*see People v Muniz*, 93 AD3d 871, 875 [2012], *lv denied* 19 NY3d 965 [2012]; *People v Grady*, 40 AD3d 1368, 1370 [2007], *lv denied* 9 NY3d 923 [2007]).

Nor did County Court abuse its discretion in admitting a police detective's testimony regarding statements made by certain other witnesses during police interviews. "The testimony was admitted not for its truth, but to provide background information as to how and why the police pursued and [investigated] defendant," and the court adequately instructed the jury to that effect (*People v Tosca*, 98 NY2d 660, 661 [2002]; *see People v McCottery*, 90 AD3d 1323, 1325 [2011], *lv denied* 19 NY3d 975 [2012]). Finally, although the item could have been admitted during the People's direct case, the court properly permitted the People to reopen for the purpose of offering the victim's bloodstained sweatshirt into evidence (*see People v Gragnano*, 63 AD3d 1437, 1442-1443 [2009], *lv denied* 13 NY3d 939 [2010]; *People v Higgins*, 45 AD3d 975, 978 [2007], *lv denied* 10 NY3d 766 [2008]).

Defendant's remaining arguments have been considered and found to be lacking in merit.

Malone Jr., Kavanagh, Stein and Garry, JJ., concur. Ordered that the judgment is affirmed.